UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTIAN JAMPIER BRAZON PATINO,

Petitioner,

v.

JULIO HERNANDEZ, Seattle Acting Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement; BRUCE SCOTT, Warden, Northwest ICE Processing Center; MARKWAYNE MULLIN, United States Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, United States Attorney General,

Respondents.

CASE NO. 2:26-cv-04094

ORDER

## 1. INTRODUCTION

This matter comes before the Court on Petitioner Christian Jampier Brazon Patiño's petition for a writ of habeas corpus. Dkt. No. 1. Having reviewed the petition, the return, Dkt. No. 5, the traverse, Dkt. No. 8, and the relevant record, the Court GRANTS the petition.

## 2. BACKGROUND

Brazon Patiño is a citizen of Venezuela who came to the United States fearing persecution for his political opposition to the Venezuelan government. Dkt. No. 1-2 ¶ 1. He entered the United States in December 2021 with his mother, crossing the U.S.-Mexico border in Texas. *Id.* ¶ 2. Seeking asylum, they immediately surrendered to immigration officers. *Id.*

Immigration officers detained Brazon Patiño and his mother for about two days. *Id.* ¶ 3. On December 4, 2021, Immigration and Customs Enforcement (ICE) released him on an Order of Release on Recognizance ("OREC"). Dkt. No. 7-2 at 2. Officers gave him a Notice to Appear ("NTA") in Miami Immigration Court and instructions to report to ICE. Dkt. No. 1-2 ¶ 4. After his release, Brazon Patiño and his mother then moved to Miami, Florida to live with his godmother. *Id.* He filed an asylum application in April 2023. Dkt. No. 7-5 at 3; *see* Dkt. No. 1-2 ¶ 5. He received a work permit and a Social Security card in 2023, and he was granted Temporary Protected Status ("TPS"), after applying that year and again in 2025; his most recent work permit is valid through 2030. Dkt. No. 1-2 ¶ 5. Once he could work, Brazon Patiño worked as a restaurant cook, a food-delivery driver, and a security guard. Dkt. No. 1-2 ¶¶ 5, 10.

Brazon Patiño says he complied with his ICE reporting requirements. *See id.* ¶ 8. ICE's arrest report says he violated the terms of his release, but the Government's counsel "could not locate evidence of any violations in the record." Dkt. No. 7-5 at 3; Dkt. No. 5 at 2 n.1.

He attended his first ICE appointment in July 2022 and was told to return the next year.[1] Dkt. No. 1-2 ¶ 8. He attended each annual check-in after that at the ICE office in Miramar, Florida. *Id.* They went without incident until July 13, 2026, when ICE arrested him without prior notice. *Id.* ¶¶ 8–17. He says the only reason the officers gave for his arrest was "to advance [his] court date," *id.* ¶ 13, and they assured him that he "would only be detained for a week at maximum," *id.* ¶ 14.

ICE transferred Brazon Patiño to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains. *Id.* ¶ 16. On September 2, 2026, an immigration judge ruled that she lacked jurisdiction to set bond because he was subject to mandatory detention. Dkt. No. 7-8 at 2. But she found in the alternative that he was "Not a Danger/Not a Flight Risk" and would have granted an $8,000 bond. *Id.* at 3. On September 29, the immigration judge ordered Brazon Patiño removed to Venezuela, and his appeal to the Board of Immigration Appeals (BIA) is pending. Dkt. No. 7-9 at 4; Dkt. No. 6 ¶ 12.

## 3. LEGAL STANDARD

### 3.1 Habeas corpus.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United

---

[1] When Brazon Patiño attended his initial hearing at the Miami Immigration Court in July 2022, he was told that his hearing has been postponed to 2024. Dkt. No. 1-2 ¶ 6. In 2024, he reviewed his Automated Case Information System ("ACIS") page and found that his hearing had been postponed, again, to 2025. *Id.* ¶ 7. And in 2025, it was postponed again to December 29, 2026. *Id.*

States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**3.2 Equitable relief.**

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."

*Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

A plaintiff seeking a permanent injunction must show: "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

## 4. DISCUSSION

### 4.1 Brazon Patiño is not subject to mandatory detention under 8 U.S.C. § 1225(b).

The Government acknowledges that courts in this District, including this Court, have found that noncitizens re-detained after release on an OREC are detained pursuant to 8 U.S.C. § 1226(a) and not Section 1225(b). Dkt. No. 5 at 4; *see, e.g.*, *Romero Cantaderio v. Blanche*, No. 2:26-cv-02394-GJL, 2026 WL 2516756, at *2 (W.D. Wash. Aug. 26, 2026) (rejecting the Government's argument that noncitizens who are re-detained after release on OREC are subject to mandatory Section 1225(b) detention); *Shcralishocvich Azimov v. Scott*, No. 2:26-cv-02846-TMC, 2026 WL 2797213, at *2 (W.D. Wash. Sept. 18, 2026) ("Where, as here, a petitioner was released on an OREC after initial detention, he is then subject to §

1226(a) if re-detained, absent changed circumstances justifying detention under a different statute.”).

There’s no reason to distinguish Brazon Patiño’s case. ICE released him on an OREC, Dkt. No. 6 ¶ 4, which is authorized only under Section 1226(a), *see Ortega Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding noncitizens released on an OREC must necessarily have been detained and released under Section 1226). That Brazon Patiño is not subject to mandatory detention under Section 1225(b) is reaffirmed by his NTA, which charges him as an alien present in the United States without being admitted or paroled. Dkt. Nos. 7-4 at 2. Similarly, the warrant for his 2021 arrest states he was found “within the country” and was “taken into custody as authorized by [Section 1226].” Dkt. No. 7-1 at 2.

Thus, the Court finds that Brazon Patiño is not subject to mandatory detention under Section 1225(b) and is instead subject to detention under Section 1226(a).

### 4.2 Brazon Patiño’s re-detention and OREC revocation violated due process.

Applying the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), courts have consistently found that the Government violates due process when it revokes a person’s OREC and re-detains them without notice and a pre-deprivation hearing. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025); *Mendez Rodriguez v. Hernandez*, No. 2:26-cv-02620 GJL, 2026 WL 2546112, at *3–4 (W.D. Wash. Aug. 28, 2026). The Government concedes that the facts here are similar to those in prior cases where courts found that ICE violated due process

by re-detaining a noncitizen for purported violations of an OREC without a pre-deprivation hearing. Dkt. No. 5 at 6; *see also Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1195 (W.D. Wash. 2025).

The Court agrees there's no reason to distinguish this case from all the others. Applying the *Mathews* factors, the Court first finds that Brazon Patiño has a strong, fundamental liberty interest in not being detained. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). Second, the risk of erroneous deprivation without notice and a pre-deprivation hearing is high. The Government still hasn't substantiated why it revoked Brazon Patiño's OREC and re-detained him, and it has provided no documentation of the revocation or reasons for it. And when an immigration judge finally considered the question two months later, she found him neither a danger nor a flight risk. Finally, as the Court has repeatedly found, "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *Ledesma Gonzalez*, 808 F.Supp.3d at 1203 (quoting *Wamsley*, 795 F.Supp.3d at 1324).

Accordingly, the Court finds that the Government violated Brazon Patiño's due process rights when it revoked his OREC and re-detained him without notice or a hearing. Having shown that his detention is unlawful, Brazon Patiño is entitled to release. *See Veliz-Pina v. Semaia*, No. 5:26-cv-04590-MBK, 2026 WL 3012453, at *8 (C.D. Cal. Oct. 6, 2026) (When a petitioner's detention "has been unlawful from the outset," release is the most appropriate remedy because it restores the status quo,

as much as possible.); *Kirykovich v. Hernandez*, No. 2:26-CV-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (finding that habeas relief should restore the status quo ante litem and that ordering a bond hearing instead of release "would reward the government for detaining first and asking questions later"). For the same reason, the Court declines the Government's request to impose the immigration judge's alternative $8,000 bond order instead. Dkt. No. 5 at 8.

### 4.3 Injunctive relief is warranted to protect against future constitutional violations and to restore the status quo.

Having found a due process violation, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay*, 547 U.S. at 391.

First, Brazon Patiño has suffered irreparable harm, and that harm is likely to recur absent injunctive relief. ICE already detained him without any notice or hearing despite his active engagement with his immigration case and his compliance with ICE reporting requirements, and he has been identified as a target for detention. Dkt. Nos. 1 ¶¶ 3, 5; 7-5 at 3. And the Government maintains that he is subject to mandatory detention without any hearing at all, leaving the Court with no assurance that Brazon Patiño won't face the same due process violation again. *See eBay*, 547 U.S. at 391. Second, monetary damages can't remedy the deprivation of liberty, and third, requiring the Government to follow constitutional procedures imposes no undue hardship. Lastly, the public interest favors compliance with the law.

Brazon Patiño asks the Court to prohibit his re-detention absent pre-deprivation notice and a hearing before a neutral decisionmaker. Courts in this District have granted similar relief under comparable circumstances. *See, e.g.*, *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *6 (W.D. Wash. Jan. 23, 2026); *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, No. 25-cv-02067-JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (same). Accordingly, the Court prohibits Brazon Patiño's re-detention unless the Government first gives him written notice of the basis for the proposed re-detention and a hearing before a neutral decisionmaker to determine whether detention is appropriate.

Brazon Patiño also asks that, at any pre-detention hearing, the Government bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community, and that no alternatives to detention would mitigate those risks. Dkt. No. 1 at 18. The Court agrees that a heightened evidentiary standard is appropriate. Brazon Patiño's initial release necessarily reflected a government determination that he was not a danger or a flight risk, and it is the Government that seeks to reverse that determination and reimpose confinement. *See* Dkt. No. 7-2 at 2; *Espinoza Palacios*, 2026 WL 686138, at *10–*11. And because he "was previously managed under less restrictive conditions," the Government "must demonstrate that those alternatives to detention are no longer adequate

before imposing the most restrictive option." *See Delvi Rios Nava v. Julio Hernandez*, No. 2:26-CV-03108-JNW, 2026 WL 2884140, at *6 (W.D. Wash. Sept. 25, 2026). So at any re-detention hearing, the Government bears the burden of proving by clear and convincing evidence that Brazon Patiño is a flight risk or a danger to the community and that no alternative conditions would mitigate those risks. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1038.

### 4.4 Brazon Patiño will be released subject to his most recent pre-detention conditions of release.

The Parties dispute whether Brazon Patiño should be subject to GPS monitoring upon his release, and Brazon Patiño asks the Court to enjoin the Government from placing any electronic GPS monitoring device on him as a condition of release during the pendency of his removal proceedings, absent certain circumstances. Dkt. No. 1 at 18. Because the purpose of habeas relief is to restore the status quo ante litem, Brazon Patiño should be released under the conditions he was actually under before his re-detention. *See* Dkt. No. 7-2 (OREC and addendum); *see, e.g.*, *Sarwari v. Wamsley*, No. 2:26-CV-00121-TL, 2026 WL 279968, at *8 (W.D. Wash. Feb. 3, 2026) (ordering that "Respondents SHALL release Petitioner from detention immediately pursuant to the conditions in his preexisting Order"); *Kumar v. Noem*, No. C26-294-SKV, 2026 WL 668335, at *1 (W.D. Wash. Mar. 10, 2026) (ordering petitioner's "immediate release from custody under the same conditions previously imposed"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1139 (W.D. Wash. 2025) (ordering the "immediate[ ] release [of] Petitioner from custody under the conditions of his expired parole agreement").

Brazon Patiño has never been subject to electronic GPS monitoring, either through a phone application or a device like an ankle monitor, and he was not subject to it when ICE re-detained him. Dkt. No. 1-2 ¶¶ 9, 11–13. Although his OREC includes an electronic monitoring condition, Dkt. No. 7-2 at 2, his declaration establishes that ICE never fitted him with a GPS monitor or otherwise subjected him to GPS monitoring during the nearly five years before his re-detention, Dkt. No. 1-2 ¶ 9. The Government doesn't dispute this or identify any monitoring conditions in effect when ICE arrested him. *See* Dkt. No. 5 at 2–3, 6–7. A condition ICE never enforced is not part of the status quo the Court must restore.

Accordingly, during the pendency of Brazon Patiño's removal proceedings, the Government may not place him on electronic GPS monitoring without written notice and a hearing before a neutral decisionmaker at which the Government must prove by clear and convincing evidence that the new condition is appropriate. *See Rios Nava*, 2026 WL 2884140, at *6 (citing *Laguna v. Hernandez*, No. 2:26-CV-00864-GJL, 2026 WL 2516736, at *2 (W.D. Wash. Aug. 14, 2026)).

Finally, return of Brazon Patiño's property is an appropriate and routine request for relief alongside his immediate release, as it also restores the status quo. *See, e.g.*, *Sencion-Hernandez v. Hernandez,* No. 2:26-CV-01578-TMC, 2026 WL 1405954, at *1 (W.D. Wash. May 19, 2026) (requiring return of personal documents). The Government must return any personal property taken from him, such as money or personal possessions, personal identification documents (other than a passport) and employment authorization documents. *See Zavala Sandoval v.*

*Hernandez*, No. 2:26-CV-01198-JNW, 2026 WL 1661379, at *6 (W.D. Wash. June 9, 2026).

## 5. CONCLUSION

Based on the foregoing, the Court GRANTS Petitioner's Petition for Writ of Habeas Corpus, Dkt. No. 1, and ORDERS as follows:

1. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to his most recent, pre-detention conditions of release, without electronic monitoring.
2. Within FORTY-EIGHT (48) hours of his release, the Government must PROVIDE the Court with a status report confirming that Petitioner has been released from custody and stating the date and time of his release.
3. On release, Respondents must return Petitioner's personal property, including personal identification and employment authorization documents (other than a passport).
4. Respondents are permanently enjoined from re-detaining Petitioner or placing an electronic GPS monitoring device on him during the pendency of his removal proceeding absent prior written notice and a prior hearing before a neutral decisionmaker where Respondents must prove by clear and convincing evidence that the new condition is appropriate.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the

award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 25th day of November, 2026.

Jamal N. Whitehead
United States District Judge